IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PATRICE H. LANDRUM,   )<br>   )<br>   Plaintiff,   )<br>   )<br>v.   )<br>   )<br>MICHAEL J. ASTRUE,   )<br>COMMISSIONER OF SOCIAL SECURITY,   )<br>   )<br>   Defendant.   )<br>   ) | Civil Action No. 3:08-2678-TLW-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

On August 1, 2006, Plaintiff applied for DIB and SSI. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held October 17, 2007, at which Plaintiff appeared and testified, the ALJ denied Plaintiff's claims in a decision issued December 13, 2007, finding that Plaintiff was not disabled. The ALJ found, under the medical-vocational guidelines (the "Grids") promulgated by the Commissioner, that Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was forty-nine years old at the time of the ALJ's decision. She has a four-year college education as well as vocational training as a message therapist (Tr. 123, 165), and past relevant work experience as a massage therapist and water purifier sales associate. (Tr. 119). Plaintiff alleges disability since January 1, 2006[1] due to HIV infection and hepatitis C. (Tr. 9, 54, 118).

## ALJ'S FINDINGS

The ALJ found (Tr. 20-32):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 2006, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et. seq.*, 416.920(b) and 416.971 *et. seq.*).

3. The claimant has the following severe impairments: HIV+, hepatitis C and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light[2] work.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.l565 and 416.965).

---

[1] Plaintiff's alleged onset date was amended at the hearing from January 2004 to January 2006. See Tr. 23.

[2] Light work activity involves lifting and carrying up to 20 pounds occasionally and 10 pounds frequently with walking, standing, and sitting for 6 hours in an 8-hour day.

2

7. The claimant was born on October 13, 1958 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.l563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**MEDICAL EVIDENCE**

Prior to the amended alleged onset date of disability, Plaintiff had a history of cocaine addiction and intravenous drug use (both of which ended in the late 1990s), HIV infection and depression (both diagnosed in 1997), and Hepatitis C (diagnosed in 1998). See Tr. 125, 300, 329. After she was diagnosed with HIV, Plaintiff began taking a combination of medications (Combivir and Viracept) for three years. She experienced side-effects including fatigue and diarrhea and switched to Truvada and Sustiva. Tr. 307. Plaintiff periodically had to be treated for oral candidiasis (yeast infections of the mouth) related to her HIV. Tr. 307. During that time, Plaintiff received antidepressant medication from her primary care provider, but did not receive any other mental health treatment. Tr. 125. From February 2003 to November 2006, Plaintiff's primary treating physician was Dr. Beth Cardosi. Tr. 170-205, 260-301.

Plaintiff underwent thirty weeks of a forty-eight week Interferon and Ribavirin therapy for her Hepatitis C from January to September 2006. Tr. 51, 307. She had additional mouth infections while she was on Interferon and Ribavirin. Tr. 307. She also reported additional significant medication side-effects, so the therapy was discontinued. See Tr. 40-43, 51, 185, 261, 307, 329.

Between March 2006 and September 2007, Plaintiff sought periodic counseling for depression from a licensed clinical social worker. She reported fatigue, mood swings, and suicidal thoughts without any plan or intent. On one occasion, the social worker assessed global assessment of functioning score of 55, indicating moderate symptoms. Tr. 321- 328.

In September 2006, Dr. Judith Von, a State agency psychologist, reviewed Plaintiff's medical records and determined she had a non-severe affective disorder (mild depression which responded to Zoloft) and a substance addiction disorder (a history of substance abuse, but now abstinent). Dr.

Von opined that these disorders caused no restrictions of Plaintiff's activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. Tr. 206-216.

A State agency physician reviewed Plaintiff's medical records in September 2006 and opined that Plaintiff had the physical RFC to perform the exertional demands of light work (lifting twenty pounds occasionally, lifting ten pounds frequently, and standing and walking about six hours and sitting about six hours in an eight hour workday). Additional limitations were that Plaintiff could never climb ladders, ropes, or scaffolds, and she could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. Tr. 220-226.

In October 2006, Plaintiff reported having vivid dreams, so her HIV medications were changed back to Combivir and Viracept. Tr. 307. In January 2007, Dr. Edward Waller, a state agency psychologist, reviewed Plaintiff's medical records and determined she had non-severe affective and substance addiction disorders which caused no restriction of her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. Tr. 236-248.

Dr. Joseph Gonzales, a State agency physician, also reviewed Plaintiff's medical records in January 2007. Dr. Gonzales opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand/walk about six hours and sit about six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. Tr. 250-257.

In February 2007, Plaintiff began treatment with infectious disease specialist Dr. Kathleen S. Paranda for her HIV and Hepatitis C. Plaintiff complained of occasional stress–related headaches,

an occasional cough, and recent diarrhea. She denied having any nausea, vomiting, abdominal discomfort, or joint or muscle pain. Dr. Paranada's examination revealed that Plaintiff was not in any distress, she had no oral infection, her liver and spleen were not palpable, and her abdomen was soft with good bowel sounds. No motor, sensory, or reflex deficits were observed. Tr. 307-308.

On October 30, 2007, Dr. Paranda wrote a letter to Plaintiff's attorney in which she reported that Plaintiff was compliant with her HIV medications, although her treatment was made difficult by medication side-effects requiring several adjustments by Dr. Cardosi over the years. She reported that Plaintiff had loose stools, occasional diarrhea, and occasional fatigue due to her medications (Combivir and Viracept), but Plaintiff wished to continue this regimen, as she had tolerated it best. Dr. Paranda observed that these medications kept Plaintiff's "CD4 to over 1000 and her viral load undetectable, which are laboratory parameters that indicate an excellent immunologic and virologic response to her medications." She reported that Plaintiff's prognosis with her HIV infection was relatively good, but her Hepatis C had been more difficult to treat because prior Interferon therapy resulted in "profound fatigue and depression." Dr. Paranda opined that Plaintiff's "co-infection and her medications [were] making it difficult for [Plaintiff] to continue her work as a massage therapist." She concluded that, based on Dr. Cardosi's notes, Plaintiff "may have been disabled previously with depression and fatigue." Tr. 329.

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council. This included a treatment record and an HIV Infection Medical Assessment Form from Dr. Paranda, both dated in January 2008 (one month after the ALJ's decision). Tr. 11-19. On the form, Dr. Paranda found that Plaintiff complained of "fatigue, which may be multi-factorial," depression, social stressors, and diarrhea. Regarding Plaintiff's mental limitations, Dr. Paranda checked a line indicting

6

that Plaintiff would have "marked" difficulties in completing tasks in a timely manner due to deficits in concentration, persistence, or pace.³ Dr. Paranda indicated that Plaintiff's symptoms would frequently interfere with her ability to perform even simple work tasks, and she would be unable to perform any routine, repetitive tasks at a consistent pace or meet strict deadlines. Dr. Paranda opined that Plaintiff had physical limitations which would likely require her to take three unscheduled breaks a day, lasting thirty minutes each. Tr. 14-15.

## **HEARING TESTIMONY**

At the hearing before the ALJ, Plaintiff testified that her condition started getting worse in 2004, at which time her viral load was "off the charts." Tr. 38. She stated that during her Interferon treatment, she experienced fever, fatigue, body aches, pain in her bones, mood swings, chronic fatigue, and mouth sores. Tr. 40-41. Plaintiff testified that she experienced chronic fatigue for ten years. Tr. 41. She said that she could not take medications for both HIV and Hepatitis C at the same time. Tr. 42.

After stopping Interferon treatment, Plaintiff's fatigue was not as bad, but she stated that she continued to have body aches, headaches, gastrointestinal problems, and anemia. Tr. 44. She testified that she received counseling through a program, but they would not pay for a psychiatrist, and she did not have private health insurance. Tr. 43-44. Plaintiff claimed that she could not keep a job because there was no way she could show up every day, she could not make it through an entire day, and she had to lie down at least once a day. Tr. 47.

---

³The form did not contain any options for checking any degree of limitation other than "marked" (such as "none," "mild," or moderate.").

7

In a typical day, Plaintiff drove her two teenagers to school in the morning, did a load of laundry, and had to lie down. Tr. 45. She testified that her children helped with housework, but she did the cooking. Tr. 45.

## **DISCUSSION**

Plaintiff alleges that: (1) the Appeals Council erred in failing to make findings of fact concerning the weight it gave to Dr. Paranda's January 2008 opinion; (2) the ALJ committed reversible error by failing to obtain vocational expert ("VE") testimony; (3) the ALJ failed to fully and fairly develop the administrative record by refusing to order a consultative psychiatric or psychological evaluation; (4) the ALJ made improper credibility findings; and (5) if this case is remanded it should be assigned to a different ALJ due to the ALJ's failure to grant a fair hearing. The Commissioner contends that substantial evidence[4] supports the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

    A.    Credibility

Plaintiff alleges that the ALJ made improper credibility findings because he found her not credible simply because she was able to take her children to school, do laundry, cook meals, and shop. She argues that the ALJ ignored other evidence in the record that showed that Plaintiff was not able to sustain these activities for very long, she was not able to perform them at

---

[4]Substantial evidence is:
>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

8

all some days, and Plaintiff testified that her children were teenagers and helped with the household duties. The Commissioner contends that the ALJ's determination concerning Plaintiff's credibility is supported by the medical records and her activities of daily living.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ, in discounting Plaintiff's credibility, does not appear to have considered all of the evidence. Although Plaintiff testified that she was able to do certain activities (such as drive her children to school, do a load of laundry, cook meals, and grocery shop), the ALJ appears to have ignored that Plaintiff also testified that she was not able to sustain these activities for very long, she got help from friends with household chores, and some days she was not able to perform these activities at all. See Tr. 39-51, 85, 125, 132. She also testified that her children were teenagers and helped with the household duties. Tr. 45. The ALJ appears to have discounted Plaintiff's credibility

9

as to her complaints of fatigue and diarrhea based primarily on medical records as to her level of fatigue prior to her alleged onset date. See Tr. 29 (citing records in August 2004, October 2004, and April 2005). The medical records, however, also show that Plaintiff complained of fatigue and memory changes to Dr. Cardosi during her Interferon treatment. See Tr. 172, 185, 188. The ALJ also discounted Plaintiff's complaints of fatigue and diarrhea because Dr. Paranda, in her October 2007 letter, only indicated that Plaintiff experienced these symptoms on occasion. Review of the medical records, however, reveals that Plaintiff continued to complain of fatigue and diarrhea even after her Interferon treatment. In November 2006, Plaintiff complained of fatigue to Dr. Cardosi. Tr. 260. Plaintiff complained to her psychological counselor about decreased energy in June 2007 (Tr. 324), ongoing fatigue in July 2007 (Tr. 323), and increased fatigue in August 2007 (Tr. 322). In February 2007, Plaintiff complained to Dr. Paranda of the side effects of her medications, particularly fatigue and daily diarrhea. Tr. 308-309. On March 20, 2007, Plaintiff told Dr. Paranda her main complaint was feeling tired and that she must have a nap. Tr. 304, 306. She complained to Dr. Paranda of diarrhea in July 2007 (Tr. 303), and decreased sleep in September 2007 (Tr. 302).[5]

B.     Grids/VE

Plaintiff alleges that the ALJ erred by failing to obtain VE testimony where she has the significant nonexertional impairments of depression, fatigue, and deficits in the ability to concentrate or attend to work tasks. The Commissioner contends that the ALJ properly relied on the

---

[5] Further, the evidence submitted to the Appeals Council also appears to support Plaintiff's credibility as to her subjective complaints. The Commissioner contends that the January 2008 treatment record and assessment were not material as they were not retrospective, did not apply to the relevant period, and did not provide a reasonable basis for changing the ALJ's decision. These records, however, were only one month after the ALJ's decision, Dr. Paranda's January 2008 treatment note and letter provides clarification as to her earlier letter (October 2007), and the new evidence indicates complaints of fatigue and diarrhea every three to four hours. See Tr. 14 and 17.

Grids to determine that Plaintiff was not disabled, as the Grids contemplate the unskilled light occupational base, and the ALJ found that Plaintiff's only credible nonexertional limitation was a restriction to unskilled work.

When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985); Cook v. Chater, 901 F. Supp. 971 (D.Md. 1995). A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not. See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983); see also 20 C.F.R. § 404.1569a. Every nonexertional condition does not, however, rise to the level of a nonexertional impairment. The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable. Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984).

The ALJ's decision to rely on the Grids and not obtain testimony from a VE is not supported by substantial evidence. Here, the ALJ found that Plaintiff suffered from the nonexertional impairments of depression and fatigue. Although the ALJ discounted Plaintiff's credibility as to these complaints, it appears that he did not consider all of the evidence in making that determination, as discussed above. Further, the ALJ found that Plaintiff had mild to moderate difficulties as to her concentration. Tr. 26. This action should be remanded to the ALJ to obtain testimony from a VE

as to whether there are a significant number of jobs which Plaintiff can perform despite her nonexertional impairments.

        C.        <u>Consultative Psychological Examination</u>

Plaintiff alleges that the ALJ failed to fully and fairly develop the administrative record by refusing to order a consultative psychiatric or psychological evaluation because records from Dr. Cardosi showed that depression was a significant issue and medication had been prescribed for her condition; Dr. Cardosi completed a depression questionnaire indicating that Plaintiff was stable on Zoloft, but the dosage had to be increased in response to increasing depression symptoms associated with Hepatitis C treatment; and records from Dr. Paranda, Plaintiff's counselor, and additional records from Dr. Cardosi which documented ongoing and severe depression. Tr. 125, 170-205, 260-331. The Commissioner contends that the record contained sufficient information for the ALJ to reach an informed decision as to Plaintiff's disability status, such that the ALJ was not required to order a consultative evaluation. Ordering a consultative examination is within the discretion of the ALJ. <u>See</u> <u>Sims v. Apfel</u>, 224 F.3d 380, 381 (5th Cir.2000); <u>see also</u> <u>Skinner v. Astrue</u>, 478 F.3d 836, 844 (7th Cir. 2007); <u>see generally</u> 20 C.F.R. §§ 404.1519, 416.919. "The decision to purchase a consultative examination ... will be made after [the ALJ] [has] given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of [a claimant's] medical sources." 20 C.F.R. §§ 404.1519a(a), 416.919a(a). Pursuant to the regulations, however, a consultative examination is normally required, inter alia, where "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved" or "[t]here is an indication of a change in [a

12

claimant's] condition that is likely to affect [his] ability to work ." 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Here, Plaintiff's depression was a longstanding impairment that was present for many years before she stopped performing substantial gainful activity. The record before the ALJ contained comprehensive medical records dated from 2003 through 2007 (Tr. 170-331), all of the records from the only mental health specialist who treated Plaintiff (a licensed social worker)(Tr. 321-328); several Disability Reports in which Plaintiff reported some mood swings, but did not allege disability due to depression (Tr. 114-124, 138-148); a Report of Contact in which Plaintiff told an agency employee that her antidepressant medication was working well (Tr. 125); and two Psychiatric Review Technique forms from two state agency psychologists who separately concluded that Plaintiff did not have a severe mental impairment. Tr. 206-216, 236-246. Additionally, there is also no indication of conflict, inconsistency, ambiguity, or insufficiency in the record which needs to be resolved. The ALJ did not err by not ordering a consultative psychological or psychiatric examination.

D.     Failure to Grant a Fair Hearing/Remand to a Different ALJ

Plaintiff alleges that if this case is remanded, it should be assigned to a different ALJ due to the ALJ's failure to grant a fair hearing because the ALJ failed to abide by longstanding Fourth Circuit precedent with regard to development of the record and the use of VE testimony. She cites 20 C.F.R. § 404.940[6] and 5 U.S.C. § 2301(b)(4)("All employees should maintain high standards

---

[6]This regulation provides, in part:
An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must
(continued...)

of integrity, conduct, and concern for the public interest.") in support of her argument. The Commissioner contends that Plaintiff received a fair hearing.

"ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (citation and internal quotation marks omitted). An ALJ should always strive to be non-confrontational and even-tempered, but, as the courts have stated "'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display' do not establish bias. Rather, [a plaintiff is] required to show that the ALJ's behavior, in the context of the whole case, [is] 'so extreme as to display clear inability to render fair judgment.'" Rollins v. Massanari, 261 F.3d 853 (9th Cir. 2001)(citations omitted)(quoting from Liteky v. United States, 510 U.S. 540, 551, 555-56 (1994)). But see Keith v. Massanari, 2001 WL 965106 (7th Cir. Aug. 23, 2001)[Table](case may be reversed upon record proof raising appearance of bias).

Here, Plaintiff appears to allege bias because his request for VE testimony and a consultative mental examination were denied. Her allegations fall short of the showing bias.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to obtain testimony from a VE and to consider Plaintiff's

---

[6](...continued)
notify the administrative law judge at your earliest opportunity. The administrative law judge shall consider your objections and shall decide whether to proceed with the hearing or withdraw.
20 C.F.R. § 404.940.

credibility in light of all of the evidence (including the additional information submitted to the Appeals Council).

It is, therefore, RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and the case be remanded to the Commissioner for further administrative action as set out above.

_____
Joseph R. McCrorey
United States Magistrate Judge

August 31, 2009
Columbia, South Carolina